IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WEBB MASON, INC.

 *Plaintiff*,

v.

VIDEO PLUS PRINT SOLUTIONS,
INC.,

 *Defendant*.

Civil Action No. ELH-17-3016

## MEMORANDUM OPINION

In this breach of contract litigation, plaintiff Webb Mason, Inc. ("Webb Mason") has filed suit against Video Plus Print Solutions, Inc. ("VPP"), alleging that VPP accepted business from a customer of Webb Mason, in violation of the "non-interference" clause of their contract. *See* ECF 1 ("Complaint"), ¶¶ 3-6.[1] VPP has moved to dismiss the Complaint or, in the alternative, for summary judgment. *See* ECF 12. The motion is supported by a memorandum of law (ECF 12-1) (collectively, the "Motion") and exhibits. ECF 12-2 through 12-4. Webb Mason opposes the motion. ECF 17 ("Opposition"). VPP has replied. ECF 18 ("Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall construe the Motion under Rule 12(b)(6), and I shall deny the Motion.

## I. Factual Background[2]

Webb Mason is an "integrated marketing solutions and services provider engaged in the business of helping their [sic] clients execute their marketing strategies." ECF 1, ¶ 1. Among other things, Webb Mason helps clients "design and produc[e] marketing and promotional

---

[1] Subject matter jurisdiction is based on diversity of citizenship. *See* ECF 1, ¶¶ 7-9.

[2] As explained, *infra*, for the purpose of the Motion, I must assume the truth of Plaintiff's allegations and draw all reasonable inferences in its favor.

materials with the assistance of [its] preferred vendors." *Id.* ¶ 1. These "preferred vendors" comprise a "Preferred Partner Network," which "consists of businesses that Webb Mason identified as world-class suppliers that can provide Webb Mason's customers with superior products at a cost effective price." *Id.* ¶ 1, 13. Suppliers in the network gain access to Webb Mason sales executives, who in turn offer the suppliers business opportunities with Webb Mason's clients. *Id.* ¶ 14.

VPP is a Canadian corporation with its principal place of business in Ontario, Canada. *Id.* ¶ 8. It "is a video marketing device manufacturer, which sells a variety of marketing devices, including video mailers." *Id.* ¶ 2. Video mailers are "marketing mailers with a built-in screen that plays a prerecorded video message." *Id.* ¶ 19. On January 8, 2015, VPP became a member of Webb Mason's Preferred Partner Network by signing plaintiff's Preferred Partner Agreement ("PPA" or "Agreement"). *Id.* ¶ 18. A copy of the PPA is attached as an exhibit to the Complaint. *See* ECF 1-1.

In connection with joining Webb Mason's network, VPP agreed to certain "minimum program requirements," including a "non-interference requirement." ECF 1, ¶ 15; *see* ECF 1-1 at 11. In relevant part, the non-interference requirement of the PPA provides, ECF 1-1 at 11[3]:

> [B]eginning on the date of the Contractor's most recent receipt of Customer Information from the Company on a specific Customer and for two (2) years thereafter, Contractor (and its affiliates) shall not without the prior written consent of the Company, (i) directly or indirectly solicit, or accept the business of the Customer or induce the Customer to cease doing business with the Company or otherwise interfere with the Company's relationship with the Customer or: (ii) use Customer information to solicit or accept the business of, or otherwise interfere with, the Company's relationship with any Excluded Customer.

---

[3] In the context of this case, VPP is the "participant," "Contractor," or "Vendor"; Webb Mason is the "Company"; and the "Customer" refers to Webb Mason's client. *See* ECF 1-1 at 10.

Elsewhere in the Agreement, Webb Mason highlights its "policy to prohibit suppliers in the Preferred Partner Network from selling same or related products directly to [plaintiff's] customers as identified through confidential communications, request for quotation or actual work product." ECF 1-1 at 6.[4] Webb Mason alleges that the parties "have had numerous conversations about VPP's non-interference obligations . . . and have discussed prospective business activities that would have infringed the non-interference clause" in the PPA. *Id.* ¶ 26. CoStar, a commercial real estate information company, is one of Webb Mason's "long-standing customer[s]." *Id.* Webb Mason alleges that VPP produced materials for CoStar, giving rise to the breach of contract claim here. *Id.* at 27.

In particular, in January 2017 CoStar "began soliciting bids for a marketing campaign" that required "production of a video mailer." ECF 1, ¶ 19. The campaign was to be developed by CoStar for Apartments.com. *Id.* On January 19, 2017, Webb Mason requested a quote from VPP as to the development of the video mailers requested by CoStar. *Id.* ¶ 20. At the same time, Webb Mason communicated customer information about CoStar to VPP, "including the logistics for the Apartments.com marketing campaign project." *Id.*

On January 22, 2017, VPP provided plaintiff with estimates for pricing, "potential upgrade costs, shipping costs for the devices, and a seven week production schedule." *Id.* ¶¶ 22-23. On that same date, Webb Mason submitted its bid to CoStar, using VPP's estimates. *Id.*

Webb Mason did not win the bid for the project. *Id.* ¶ 24. However, VPP "worked directly with CoStar on the video mailers project." *Id.* ¶ 25. According to Webb Mason, VPP negotiated pricing for CoStar and received payment directly from CoStar, despite knowing "that a portion of the project was for CoStar's Apartments.com marketing campaign." *Id.* Webb

---

[4] Although plaintiff refers to itself as "Webb Mason, Inc." in its filings, it uses the name "WebbMason, Inc." in the PPA.

Mason asserts: "Not only did VPP accept business from CoStar, in direct violation of the non-interference clause of the Preferred Partner Agreement, [but] VPP sold video mailers to CoStar for the exact project that Webb Mason told VPP about . . . ." *Id.* ¶ 27. Webb Mason contends that this activity "caused Webb Mason to lose its bid for CoStar's Apartments.com project." *Id.* at 40.

In the Motion, VPP asserts that it submitted a quotation to Jack Nadel International ("JNI"), a company not a party to this litigation, for a project unknown to them that turned out to be the same Apartments.com project. ECF 12-1 at 4. But, Webb Mason does not mention JNI or any other third party in the Complaint.

Although VPP outlines its version of the facts in its Motion (*see* ECF 12-1 at 2-5), and it may ultimately prove those facts, those facts are not pertinent at this stage of the litigation. To the contrary, as discussed, *infra*, I must consider only the facts alleged in the Complaint.

## II. Standard of Review

### A.

As noted, VPP has moved to dismiss or, in the alternative, for summary judgment. ECF 12. A motion styled in the alternative, either to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, typically "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But when, as here, the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. At that point, the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C ALAN WRIGHT & ARTHUR MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014) ("*McCray*"). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (hereinafter, "*Harrods*") (quoting *Evans v. Tech's. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's,*

*Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing the affidavit requirement of former Rule 56(f)). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

A nonmoving party that believes that further discovery is necessary before consideration of summary judgment, but that fails to file a Rule 56(d) affidavit, does so at its peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961); *see also Dave & Buster's, Inc.*, 616 F. App'x at 561. But, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961). Indeed, the failure to

file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature [sic] and that more discovery is necessary," or when the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit,'" and if the nonmoving party "was not lax in pursuing discovery." *Harrods*, 302 F.3d at 244-45 (quoting *First Chicago Int'l v. United Exchange Co., LTD*, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988)).

Webb Mason did not file an affidavit or declaration under Fed. R. Civ. P. 56(d). But, it has indicated that it believes summary judgment is premature, as reflected in its opening protest: "VPP seeks to require Webb Mason to 'try' its case in the Complaint." ECF 17 at 2. Moreover, Webb Mason points out that "[i]t is inappropriate to convert a motion to dismiss to a motion for summary judgment at an early stage of the litigation when parties have not had an opportunity to conduct reasonable discovery." *Id.* at 6. Further, it highlights that Rule 8 "'defers until after discovery any challenge to [the complaint's] claims insofar as they rely on facts'" and that "the Court 'must account for the possibility that a noticed claim would become legally sufficient if the necessary facts were to be developed during discovery.'" *Id.* (citing *Teachers' Retirement Systems of Louisiana v. Hunter*, 477 F.3d 162, 170 (4th Cir. 2007)).

In my view, plaintiff is entitled to conduct reasonably discovery. As the Fourth Circuit stated in *McCray*, 741 F.3d at 483: "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'" *Adams Housing, LLC v. City of Salisbury, Md.*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam) (quoting *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)).

Therefore, I decline to convert the Motion to one for summary judgment. Instead, I shall

construe it as a motion to dismiss, under Rule 12(b)(6).

## B.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

With respect to a motion to dismiss under Rule 12(b)(6), courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir.

1992)).  However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'"  *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ."  *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007).  However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'"  *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,* 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied,* 543 U.S. 979 (2004).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D.

Md. 2011) (citation omitted) (emphasis in original).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

As noted, Webb Mason attached a copy of the PPA to its Complaint. *See* ECF 1-1. Webb Mason has also incorporated it into the Complaint. *See, e.g.*, ECF 1 ¶¶ 3, 6, 10, 15-18, 21, 26, 30, 33, 35-36, 38, 42. Accordingly, the PPA (ECF 1-1) may be considered by the Court without converting the Motion to one for summary judgment. *See Goines*, 822 F.3d at 166.

VPP has attached three exhibits to the Motion. *See* ECF 12-2 (Affidavit of Scott Manduck, Director of North American Operations for VPP, signed January 17, 2018); ECF 12-3 (emails between Manduck and Ben Block, National Account Manager for VPP, February 10,

2017, through February 13, 2017); ECF 12-4 (Mutual Confidentiality Agreement between VPP and JNI). These exhibits were not incorporated into the Complaint. *See* ECF 1. Nor do any of the exhibits—an Affidavit, emails between VPP and JNI employees, and a confidentiality agreement between VPP and JNI—give rise to plaintiff's claim. *Chesapeake Bay Found.*, 794 F. Supp. 2d at 611.

In my view, defendant's exhibits are not integral to the Complaint. Therefore, I shall not consider them in the context of the Motion. Defendant's factual assertions, in defense of the breach of contact claim, are not pertinent to the Motion.

## II. Discussion

### A.

VPP argues that the non-interference clause of the Agreement is unenforceable because it is both facially overbroad and overbroad as applied to VPP. *See* ECF 12-1 at 1-2. Webb Mason disputes the contentions, asserting, *inter alia*, that the non-interference clause is narrowly tailored to a protected business interest, *i.e.,* "guarding its business." ECF 17 at 12-20.

A federal court sitting in diversity jurisdiction must apply the law of the state in which the court is located, including the forum state's choice of law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Maryland is the forum state.

As to contract claims, Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g.*, *Am. Motorists Ins. Co. v. ARTRA Group, Inc.,* 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.,* 209 Md. App. 146, 161, 58

A.3d 497, 507 (2012), *aff'd,* 437 Md. 372, 86 A.3d 1245 (2014). Here, there is no allegation as to where the contract was formed, but the PPA specifies that it is to be governed by Maryland law. *See* ECF 1 ¶ 10; ECF 1-1 at 13. Moreover, the parties do not dispute the choice of law provision. Therefore, I shall apply Maryland law.

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001); *see RRC Northeast, LLC v. BAA Maryland, Inc.,* 413 Md. 638, 658, 994 A.2d 430, 442 (2010). In other words, "[i]t is the parties' agreement that ultimately determines whether there has been a breach." *Mathis v. Hargrove*, 166 Md. App. 286, 318-19, 888 A.2d 377, 396 (2005). As the Maryland Court of Appeals said in *Polek v. J.P. Morgan Chase Bank, N.A*., 424 Md. 333, 362, 36 A.3d 399, 416 (2012): "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" (Citation omitted and emphasis in *Polek*); *see also Robinson v. GEO Licensing Co.*, L.L.C., 173 F. Supp. 2d 419, 423 (D. Md. 2001).

VPP's role was essentially that of a contractor or vendor, rather than an employee of Webb Mason. Nevertheless, both parties rely, without explanation, on cases involving restrictive covenants between employers and employees. Moreover, both parties assume that Webb Mason is akin to an employer and VPP is analogous to an employee. Under the circumstances, I shall consider the standards governing restrictive covenants, as articulated in the employment context.

**B.**

The determination of enforceability of a restrictive covenant depends "on the scope of each particular covenant itself" and, "if that is not too broad on its face, the facts and circumstances of each case must [also] be examined."  *Becker v. Bailey*, 268 Md. 93, 97, 299 A.2d 835, 838 (1973); *accord Millward v. Gerstung Int's Sport Educ., Inc.*, 268 Md. 483, 488, 302 A.2d 14, 16 (1973).  As to duration, "Maryland has consistently upheld two year limitations on employment with competitors as reasonable."  *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 606 (D. Md. 2002).

Under Maryland law, there are four requirements that must be met to enforce a restrictive covenant.  *Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771, 773-74 (D. Md. 2015) (citing *Deutsche Post Global Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004) (per curiam)).  They are, *Medispec*, 133 F. Supp. 3d at 773-74:

> (1) The employer must have a legally protected interest; (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest; (3) the covenant cannot impose an undue hardship on the employee; and (4) the covenant cannot violate public policy.

*See also Paul v. ImpactOffice LLC*, TDC-16-2686, 2017 WL 2462492, at *4 (D. Md. June 6, 2017), *appeal dismissed sub nom. ImpactOffice LLC v. Siniavsky*, 17-1634, 2017 WL 6543801 (4th Cir. Dec. 1, 2017); *Holloway v. Faw*, 319 Md. 324, 334, 572 A.2d 510, 515 (1990); *Silver v. Goldberger*, 231 Md. 1, 6, 188 A.2d 155, 158 (1963).

Generally, "restrictive covenants may be applied and enforced only against those employees who provide unique services, or to prevent the future misuse of trade secrets, routes or lists of clients, or solicitation of customers."  *Becker*, 268 Md. at 97, 299 A.2d at 838 (discussing *Tuttle v. Riggs-Warfield-Roloson*, 251 Md. 45, 246 A.2d 588 (1968); *Ruhl v. F. A. Bartlett Tree Expert Co.*, 245 Md. 118, 225 A.2d 288 (1967); *Western Md. Dairy v. Chenowith*,

180 Md. 236, 23 A.2d 660 (1942); and *Tolman Laundry v. Walker,* 171 Md. 7, 187 A. 836 (1936)); *see also Ecology Servs., Inc. v. Clym Envtl. Servs., LLC,* 181 Md. App. 1, 15, 952 A.2d 999, 1007 (2008); *Fowler v. Printers II, Inc.*, 89 Md. App. 448, 459, 598 A.2d 794, 799 (1991).

In determining whether there is a legally protected interest, Maryland courts customarily consider whether "goodwill" was generated by one party for the benefit of the other party. *See Seneca One Finance, Inc. v. Bloshuck*, 214 F. Supp. 3d 457, 464 (D. Md. 2016) ("[T]he interest protectable by a non-compete provision is the goodwill that the *employee* creates with the customer while working for the employer.") (emphasis in original); *see also Deutsche Post*, 116 F. App'x at 438; *Silver*, 231 Md. at 7, 188 A.2d at 158; *Tolman Laundry*, 171 Md. at 7, 187 A. at 838. As the Maryland Court of Appeals has observed, *Silver*, 231 Md. at 7, 188 A.2d at 158 (emphasis in original):

> *[R]estraint is justified* if a part of the compensated services of the former employee consisted in the creation of the good will of customers and clients which is likely to follow the person of the former employee . . . *restraint is not justified* if the harm caused by service to another consists merely in the fact that the former employee becomes a more efficient competitor.

*Accord Holloway*, 319 Md. at 335, 572 A.2d at 515; *Fowler*, 89 Md. App. at 459, 598 A.2d at 799.

Protecting goodwill "guards against the risk that the customer will be loyal to the employee with whom he has a relationship, rather than the relatively impersonal employer." *Seneca One*, 214 F. Supp. 3d 457, 465 (D. Md. 2016); s*ee also Holloway*, 319 Md. at 335, 572 A.2d at 515; *Silver*, 231 Md. at 6, 188 A.2d at 158. Typically, the degree to which a former employee is responsible for the contacts between the customer and the employer is pertinent to the existence of goodwill. In *Millward*, 268 Md. at 488-89, 302 A.2d at 17, the Maryland Court of Appeals recognized (internal quotation marks and citation omitted; alteration added):

[T]here is a distinction

> between the cases where business success is attributable to the
> quality of the product being sold, and those where the personal
> contact of the employee with the customer is an important factor.
> In the latter case, the employer has a stronger need for protection
> against diversion of his business to the former employee who has
> had personal contacts with customers which the employer lacks.

If a court finds that a restrictive covenant is overbroad, it may nevertheless preserve and enforce the covenant by excising, or "blue penciling," unreasonable language. *Deutsche Post Glob. Mail, Ltd.*, 116 Fed. App'x at 439 (citation omitted). But, "[a] court may only blue pencil a restrictive covenant if the offending provision is neatly severable." *Id.* Moreover, a court cannot supplement, rearrange, or otherwise rewrite language. *Id.*

## C.

In the analysis of the clause at issue, *Medispec, supra*, 133 F. Supp. 3d 771, provides guidance. There, the court concluded that a convenant not to compete was "overly broad and not reasonably targeted to achieve Plaintiff's stated interest in protecting its goodwill." *Id.* at 775. It reached that conclusion because the covenant barred the former employer "from taking any job, no matter how unrelated to his prior sales work," with a direct or indirect competition. *Id. See also RLM Communications, Inc. v. Tuschen*, 831 F.3d 190, 196 (4th Cir. 2016) (construing North Carolina law and concluding that restriction of the employee's future employment was "unmoored" from employer's legitimate business interests).

The case of *Seneca One*, 214 F. Supp 457, is also instructive. There, the employer, Seneca One, sued a former employee for breach of a restrictive covenant that barred the employee from "soliciti[ing] . . . any of Seneca One's Customers," including those "with whom [she] dealt or had direct contact," and those "about whom, even without direct contact, [she] received Confidential Information." *Id.* at 464 (internal citation omitted). The non-solicitation

provision defined "Customers" broadly to include "potential customers" and "all individuals, firms, or entities that . . . have been in contact with Seneca One." *Id.*

The employee filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the restrictive covenant was overbroad. *Id.* at 459. The district court granted the motion because the restrictive covenant's definition of "Customer," coupled with the ban on "soliciting business even from individuals with whom [the employee] had no direct contact (thus eliminating any concerns regarding potential competitive advantage)," rendered the provision facially overbroad. *Id.* at 464. The court emphasized that "it [was] not possible" for an employee with "no contact or communication with the potential customers" to generate "goodwill" with the customers. *Id.* at 465.

The case of *Gill v. Computer Equip. Corp.*, 266 Md. 170, 292 A.2d 54 (1972), is also helpful. In *Gill*, the restrictive covenant at issue prevented a former employee, Earl Gill, from working for customers of his former employer, but only customers of the particular division in which Gill had worked. *Id.* at 181, 292 A.2d at 59. Gill argued that the restrictive covenant was "unduly restrictive because it contain[ed] no limitation as to [geographic] area." *Id.* at 180, 292 A.2d at 59. However, the Maryland Court of Appeals enforced the restrictive covenant. *Id.* at 181, 292 A.2d at 59. It said: "The scope of the limitation . . . basically is to customers of [the former employer] in the narrow area in which [the former employee] was employed." *Id.* In other words, the "prohibition was limited to a specific, identifiable class." *Hebb v. Stump, Harvey & Cook, Inc.*, 25 Md. App. 478, 489, 334 A.2d 563, 570 (1975) (construing *Gill*, 266 Md. 170, 292 A.2d 54).

Both parties rely on the recent case of *Paul v. Impact Office LLC*, TDC-16-2686, 2017 WL 2462492 (D. Md. June 6, 2017). *Paul* involved a customer non-solicitation provision and a

non-compete provision. The non-solicitation provision, in relevant part, prohibited the employee from "[s]olicit[ing] or accept[ing], directly or indirectly, the business of any customer or prospective customer . . . ." 2017 WL 2462492, at *5. The district court determined that the clause was overbroad and unenforceable. *Id.* at *6.

In particular, the district court found that the non-solicitation restriction on "accepting" business from the employer's customers was overbroad because "an employer's protectable interest is in 'preventing an employee from *using* the contacts establish[ed] during employment to pirate the employer's customers.'" *Id.* (quoting *Holloway*, 572 A.2d at 515) (emphasis added in *Paul*). The court elaborated, *Paul*, 2017 WL 2462492 at *6 (emphasis added):

> A bar on mere passive acceptance of unsolicited business prohibits activity that necessarily involved *no use* of prior customer relationships. Under this provision, a former employee would breach the agreement by taking an unsolicited telephone order from any company that had previously bought office supplies from [the former employer], even if the former employee had never interacted with that company and had no knowledge of its prior dealings with [the former employer]. Without any requirement that the former employee have such knowledge, the bar on accepting business is not reasonably tailored to address that concern.

In addition, the court in *Paul* found overbroad the bar on soliciting the former employer's "prospective customers," as it included "those with whom the former employee may have had no personal contact . . . ." *Id.* It noted that the term "prospective customer" would "encompass virtually any company with a need to purchase" the employer's product, even if that company had never previously interacted with the employer. *Id.* As to "prospective" customers, the court noted that they "would not have been the subject of customer goodwill generated by a former [employee]." *Id.* at *6; *Compare Holloway*, 319 Md. at 335-36, 345, 572 A.2d at 516, 521 (stating that "an accounting firm has a legitimate and protectable interest in the ongoing business

relationship it has established with its clients" and that the former employee "had served" those clients while he was with the employer).

By implication, "the bar on accepting business" *is* "reasonably tailored" when the former employee has "interacted" with a customer or has "knowledge of [a customer's] prior dealings with [the employer]." *Paul*, 2017 WL 2462492 at *6. That is the essence of plaintiff's contention.

VPP insists that the non-interference clause here is overbroad, both on its face and as applied. ECF 12-1 at 10-17. It complains that the non-interference clause prohibits VPP "from accepting any business from a Webb Mason Customer, regardless of whether VPP solicited the customer or otherwise used goodwill it created with the customer." ECF 12-1 at 10. Further, VPP argues that the restriction against accepting business "is overbroad because a company only has a protectable interest to 'prevent[] an employee from *using* the contacts established during employment to pirate the employer's customers,' not prohibiting efficient competition." *Id.* (quoting *Holloway*, 319 Md. at 335, 572 A.2d at 515) (emphasis in *Holloway*) (brackets added in Motion).[5]

In other words, VPP maintains that the "accept the business of" language is overbroad because "accepting business is not a legitimate, protectable business interest." Therefore, VPP argues that the non-interference clause is not, on its face, limited to instances where "VPP solicited the customer or otherwise used goodwill it created with the customer." ECF 12-1 at 10. It adds that even if the clause is not overbroad on its face, "it certainly is overbroad as applied to VPP . . . as there is no allegation whatsoever in the Complaint, nor can there be, that VPP

---

[5] VPP also claims that the clause is overbroad because there is no comma after the words "accepting the business of." ECF 12-1 at 12. Given the phrase's context in the non-interference clause, the restriction on "directly or indirectly solicit[ing]" is limited to the Customer, about which information has been given.

initiated [the contact with CoStar] or utilized any contacts, relationship, or goodwill with CoStar to obtain work from CoStar." ECF 12-1 at 11.

Webb Mason asserts that it "has a protected interest in guarding its business." ECF 17 at 15. In support of its claim that it had a legally protected interest, Webb Mason cites *Tuttle*, 251 Md. 45, 246 A.2d 588; *Silver*, 231 Md. 1, 188 A.2d 155; *Holloway*, 319 Md. 324, 572 A.2d 510; and *Intelus*, 7 F. Supp. 2d 635. *See* ECF 17 at 13-15. The opinions in these cases relied on a relationship that the *employee* had with the *employer's client*. *See Tuttle*, 251 Md. at 50, 246 A.2d at 590 (highlighting "the very close personal tie between the [client] and [the former employee]"); *Silver*, 231 Md. at 7-8, 188 A.2d at 158-59 (concluding that the restrictive covenant was invalid because the employee did not "exploit[] his personal contacts with customers or clients of his former employer"); *Holloway*, 319 Md. at 335, 572 A.2d at 516 (finding that the employer had a protectable interest because the employee "was in a position to establish a personal relationship with [the former employer's] clients", and "if [the former employee] left the firm it could be anticipated that those clients would follow him"); *Intelus*, 7 F. Supp. 2d at 641 (stating that the former employer "has an interest in preventing a loss of clients and good will [sic], and a covenant limiting [the former employee's] ability to take advantage of his relationships with [the former employer's] clients may be used to protect that interest").

In my view, the non-interference clause of the PPA is narrower than the one at issue in *Paul*, 2017 WL 2462492. In *Paul*, the "accept the business" provision restricted engagement with *any* customer of the company, whether or not the employee had interacted with the customer. *Id.* at *6. In this case, the solicitation/acceptance restriction is expressly limited to customers of Webb Mason who, at a minimum, have been disclosed to the contractor, *i.e.*, VPP. The clause provides that it begins on the most recent date that the Contractor (*i.e.*, VPP) receives

information from the Company (*i.e.*, Webb Mason) about "a specific Customer . . . ." *As to those customers only*, VPP is barred from soliciting or accepting business from the Customer. The provision does not extend to prospective customers. The requirement that VPP decline to accept business only from customers about which it receives information from Webb Mason is a substantial limitation absent in *Paul*, and more akin to the scenario in *Gill*, 266 Md. at 181, 292 A.2d at 59, where the restriction only applied to customers in the former employee's division.

I am satisfied that the non-interference clause is appropriately limited to customers with which VPP interacted, or about which it had knowledge from Webb Mason. I cannot conclude that the clause is overbroad on its face. And, at this juncture, on the basis of plaintiff's allegations, I cannot determine whether the clause is overbroad as applied. That would require consideration of defendant's version of the facts, which is not permissible in regard to a motion to dismiss.

VPP does not challenge the length of the restriction (two years). And, the parties do little to address the third requirement, *i.e.*, that "the covenant cannot impose an undue hardship on the employee." *Medispec*, 133 F. Supp. 3d at 773-74. VPP can still work with direct competitors of Webb Mason and freely conduct business, as long as it does not do so with "a customer it knew about directly from Webb Mason." ECF 17 at 19. The facts as alleged in the Complaint do not impose undue hardship upon VPP.

Finally, the fourth requirement provides that "the covenant cannot violate public policy." *Medispec*, 133 F. Supp. 3d at 773-74. Webb Mason submits: "'[T]he public has an interest in the enforcement of reasonable covenants.'" ECF 17 at 19 (quoting *Intelus*, 7 F. Supp 2d at 642) (brackets added in Opposition). VPP argues that the "public policy implications of requiring a party to withdraw from a blind bid/proposal once it later learns that the customer is on a "do not

touch list would be far reaching." ECF 18 at 14. In doing so, it relies on facts outside of the Complaint, for Webb Mason makes no reference to VPP being required to withdraw from any proposals.

"Restrictive covenants can play an important role in the growth of a business that depends upon the development of good will through effective customer service." *Intelus*, 7 F. Supp 2d at 642. Thus, the provision, on its face, does not offend public policy.

### III. Conclusion

In my view, plaintiff has alleged facts sufficient to state a claim. Webb Mason alleges that it gave customer information about CoStar to VPP (ECF 1, ¶ 20), and further claims that VPP then "worked directly with CoStar" on the identical project, knowing that it was the "same project that Webb Mason" had given them information about. *Id.* ¶ 25.

The facts may prove otherwise. But, at this juncture, I cannot consider defendant's version of the facts. Therefore, I shall deny VPP's Motion to Dismiss.

An Order follows.


Date: August 27, 2018                    _____/s/_____
                                         Ellen L. Hollander
                                         United States District Judge